UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALVIN YU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VOLT INFORMATION SCIENCES, INC., et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-01981-LB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND CONDITIONALLY DISMISSING ACTION**<br><br>Re: ECF No. 13 |

## INTRODUCTION

Plaintiff Alvin Yu brings this putative class action against his former employer Volt, a staffing agency that employed him from July 2016 to November 2017 as a "contingent employee hired for work at Tesla, Inc. as an assembly line worker."[1] Starting in August 2018, Volt suffered a data breach where an unknown third party gained access to Volt computer systems that contained Mr. Yu's and other putative class members' names, social-security numbers, and other personally identifiable information.[2] Volt allegedly "did not restrict unauthorized access until at least October

---

[1] Compl. – ECF No. 1 at 3 (¶ 8), 5 (¶¶ 15–16); Yu Decl. – ECF No. 24-1 at 2 (¶ 3). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 at 3–4 (¶¶ 9, 11–12).

ORDER – No. 19-cv-01981-LB

4, 2018" and "did not disclose the Data Breach until February 14, 2018."[3] Mr. Yu asserts that Volt caused harm to the plaintiffs and disregarded their rights by "intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its email and data systems were protected, failing to take available steps to prevent and stop the breaches from ever occurring, and failing to disclose to affected employees that it did not have adequate security practices."[4] Mr. Yu brings putative class claims for (1) negligence, (2) breach of an implied contract, (3) violation of the California Consumer Records Act, Cal. Civ. Code § 1798.80 et seq., (4) violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200, (5) willful violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(b), (6) negligent violation of the FCRA, (7) unjust enrichment, and (8) invasion of privacy in violation of the California Constitution.[5] Volt moves to dismiss this case and to compel Mr. Yu to submit his claims to individual arbitration based on the arbitration provision contained in his employment agreement and Volt's employee handbook.[6]

The court held a hearing and now rules as follows. The court finds that (1) the parties entered into a binding agreement that contains an arbitration provision, (2) the parties delegated questions about the arbitrability of disputes to the arbitrator by incorporating the American Arbitration Association ("AAA") employment rules into their arbitration provision, and the agreement to delegate is not unconscionable, (3) it is for the arbitrator, not the court, to determine whether or not the arbitration provision as a whole is unconscionable or whether its scope extends to cover the parties' dispute, and (4) Mr. Yu cannot arbitrate his case as a class action.

The court grants Volt's motion to compel arbitration and conditionally dismisses this case. At the hearing, Mr. Yu said that he wants to amend his complaint to add a claim under the California Private Attorney General Act ("PAGA"). The court gives Mr. Yu 21 days to file a motion for

---

[3] *Id.* (¶¶ 9–10).

[4] *Id.* at 4 (¶ 14).

[5] *Id.* at 12–27 (¶¶ 45–116). Mr. Yu's ninth cause of action is for declaratory relief. *Id.* at 27–28 (¶¶ 117–20).

[6] Def. Mot. – ECF No. 13 at 7–8.

leave to file an amended complaint. (Volt may oppose any such motion.) If Mr. Yu does not file a motion for leave to amend, the court will direct the clerk of court to close this case.

## STATEMENT

### 1. Beginning Employment at Volt

On May 26, 2016, Mr. Yu and fifteen other new hires attended an "instructional employment onboarding session" hosted by a member of Volt's management team.[7] The session lasted roughly thirty minutes and was "conducted swiftly."[8] Volt provided the new hires with "a series of legal documents to review and sign," including an "employment contract, a thirty-one-page employee handbook, three non-disclosure and confidentiality agreements, direct deposit forms, tax forms, a background check consent form, more than eight notices related to employer and government policies and rules, and a self-identification of disability disclosure."[9]

#### 1.1 Employment Agreement

Volt's employment agreement (employment contract) is one page long and contains eleven paragraphs.[10] The eighth paragraph is printed entirely in bold text (the only paragraph in bold) and states:

> **AGREEMENT TO ARBITRATE DISPUTES. Any employment and/or employment termination related disputes and/or disputes arising out of or relating to the actions of the Company** [Volt] **(or Company's employees) and/or disputes arising out of or related to any assignment and/or termination of any assignment and/or arising out of or relating to the actions of the Client** [Volt's customers] **(or Client's employees), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the employment rules of the American Arbitration Association ("AAA"), which can be found at www.adr.org or a copy of the AAA rules can be provided to Employee upon Employee's request to the Company at the time of hire. The**

---

[7] Yu Decl. – ECF No. 24-1 at 2 (¶ 4).

[8] *Id.*

[9] *Id.*

[10] Employment Agreement – ECF No. 13-2 at 2.

ORDER – No. 19-cv-01981-LB  3

**arbitrator may award any and all remedies in accordance with the laws of the state where Employee was last employed with the Company. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be entered in any court having jurisdiction. The Company and Employee hereby waive our respective rights to trial by jury of any cause of action or defense that each may have against the other or against any Client. This agreement to arbitrate disputes does not prevent Employee from filing a charge or claim with any governmental administrative agency as permitted by applicable law.**[11]

Volt provided the employment agreement only in English.[12] (Mr. Yu does not allege that he is not fluent in English.[13]) Mr. Yu did not draft or negotiate the arbitration provisions and was not required to sign or initial the provisions separately.[14] According to Mr. Yu, Volt did not review the employment agreement with the new hires or "specify" or "highlight" that it contained an arbitration provision.[15] Volt did not explain the legal consequences of the arbitration provisions.[16] Volt did not suggest that the new hires consult with an attorney about the arbitration provisions.[17] Volt did not say that new hires could opt out of any provision in the employment agreement.[18] Volt provided Mr. Yu and the other new hires an opportunity to ask questions in a group setting but did not provide an opportunity for private questioning regarding any aspect of the hiring process.[19]

---

[11] *Id.* (¶ 8) (bolding in original).

[12] Yu Decl. – ECF No. 24-1 at 3 (¶ 10).

[13] Mr. Yu confirmed at the hearing that he is not arguing that he does not speak English or that any limits in his English ability prevented him from being able to understand the employment agreement. *See also* Yu Resume – ECF No. 25-4 at 2–3, 6 (stating that he has "Native or Bilingual Proficiency" in English and Chinese and worked at jobs that presumptively require fluency in English).

[14] Yu Decl. – ECF No. 24-1 at 2 (¶¶ 7–8).

[15] *Id.* at 2 (¶¶ 5–6), 3 (¶ 17).

[16] *Id.* at 3 (¶ 17).

[17] *Id.* (¶ 9).

[18] *Id.* (¶ 11).

[19] *Id.* (¶ 13).

ORDER – No. 19-cv-01981-LB     4

The end of the employment agreement contained an attestation that states, "**EMPLOYEE/ COMPANY HAVE EACH READ AND AGREE TO THE ABOVE TERMS AND CONDITIONS.**"[20] Mr. Yu signed the employment agreement beneath the attestation.[21]

**1.2  Employee Handbook**

Volt's employee handbook (which is 24 pages, not 31) states on page 24:

> **Arbitration**
>
> Volt believes that alternative dispute resolution is the most efficient and mutually satisfactory means of resolving dispute between Volt and its employees.
>
> Any dispute, controversy or claim which arises out of, involves, affects or relates in any way to your employment with Volt or a claimed breach of the employment relationship or the conditions of employment or the termination of employment, or in any way arising out of, involving, affecting or related to any assignment or termination of any assignment with any customer of Volt, and/or disputes controversies or claims arising out of or related to the actions of Volt, Volt's employees or Volt's customer, or customer's employees under Federal, State and/or local laws shall be resolved by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the applicable rules of the American Arbitration Association (www.adr.org) in the state where you are employed by Volt. The arbitrator may be entitled to award reasonable attorneys' fees and costs to the prevailing party, in accordance with the law. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be filed in and enforced by any court having jurisdiction. This does not prevent you from filing a charge or claim with any governmental agency as permitted by applicable law.
>
> Your continued employment with Volt is your agreement to the above provision requiring arbitration of any and all employment/assignment disputes.[22]

According to Mr. Yu, Volt did not discuss the contents of the handbook.[23] Instead, it distributed an acknowledgement of receipt of the handbook and demanded that Mr. Yu and the other new hires sign the acknowledgement.[24] Volt did not explain the acknowledgement.[25]

---

[20] Employment Agreement – ECF No. 13-2 at 2 (bolding in original)

[21] *Id.*

[22] Employee Guide – ECF No. 13-4 at 26.

[23] Yu Decl. – ECF No. 24-1 at 3 (¶ 15).

[24] *Id.*

[25] *Id.* (¶ 16).

ORDER – No. 19-cv-01981-LB            5

The acknowledgement is one page.[26] The last line of the acknowledgment states, "Except as otherwise stated, I agree to arbitrate any and all disputes related to my employment or assignment(s) with Volt, as discussed in this Guide."[27] Mr. Yu signed the acknowledgement.[28]

**2. Data Breach**

Beginning on August 6, 2018, an unknown person or persons gained unauthorized access into Volt's employee email accounts and sent out numerous phishing emails.[29] The affected email addresses and computer system contained Mr. Yu's and other affected individuals' personally identifiable information ("PII").[30] Volt maintained this PII on employee email accounts in unencrypted form, and the data breachers were able to access this PII freely for several months.[31]

Volt did not restrict unauthorized access to its system until at least October 4, 2018.[32]

Volt did not disclose the data breach until February 2019.[33]

In February 2019, Volt told Mr. Yu and other affected individuals that "we have confirmed that your name, Social Security number, driver's license number, passport number, credit/debit card information, medical history information, and health insurance information [were contained within the affected employee email accounts]."[34]

---

[26] Acknowledgement – ECF No. 13-3.

[27] *Id.*

[28] *Id.*

[29] Compl. – ECF No. 1 at 3 (¶ 9).

[30] *Id.*

[31] *Id.* at 4 (¶ 12).

[32] *Id.* at 3 (¶ 9).

[33] *Id.* at 4 (¶ 10). The complaint alleges that Volt did not disclose the breach until February 14, 2018, but given that the breach took place between August and October 2018, the court assumes that this was a typo and that Mr. Yu meant to say February 2019. *Accord* Compl. Ex. 1 (Volt notice) – ECF No. 1-1 at 2 (Volt's saying that it will begin mailing written notices to potentially affected individuals on or around February 15, 2019).

[34] Compl. – ECF No. 1 at 4 (¶ 12) (alteration in original).

# ANALYSIS

Under the Federal Arbitration Act ("FAA"), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Mr. Yu does not dispute that by signing his employment agreement, he entered into a binding contract with Volt. The employment agreement thus is enforceable according to its terms.

The parties dispute three issues: (1) whether the data breach, and Volt's response to it, falls within the scope of the arbitration provision in the employment agreement, (2) whether the arbitration provision is unconscionable, and (3) whether Volt has consented to class arbitration. For the following reasons, the court holds that (1) the issue of arbitrability is delegated to an AAA arbitrator, (2) the provision is not unconscionable, and (3) Volt has not consented to class arbitration.

## 1. Arbitrability and Delegation

### 1.1 Governing Law

Under the Federal Arbitration Act, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy[,]" *Henry Schein*, 139 S. Ct. at 529 (some internal quotation marks omitted) (quoting *Rent-A-Ctr.*, 561 U.S. at 68–69), "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *id.* at 530 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* (citing 9 U.S.C. § 2). "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

### 1.2 Application

The parties' contract here expressly provides that "[a]ny employment . . . related disputes and/or disputes arising out of or relating to the actions of the Company (or Company's employees)

. . . shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the employment rules of the American Arbitration Association ('AAA')[.]"[35] The AAA employment rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[36] As another court in this district held in connection with this same Volt arbitration provision, "the incorporation of such rules constitutes a clear delegation of authority to the arbitrator." *Ortiz v. Volt Mgmt. Corp.*, No. 16-cv-07096-YGR, 2017 WL 1957072, at *2 (N.D. Cal. May 11, 2017) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015)).

Mr. Yu argues that the arbitration provision does not extend to his claims against Volt, because (so he argues) his dispute relates to the actions of the third-party data breacher, not to the actions of Volt or to his employment.[37] This interpretation is somewhat questionable, considering that Mr. Yu is bringing claims against Volt, not against the third-party data breacher. *Cf. Varela v. Lamps Plus, Inc.*, No. CV 16-577-DMG (KSx), 2016 WL 9110161, at *4 (N.D. Cal. July 7, 2016) (holding that arbitration provision in employment agreement covered claims against employer relating to data breach and theft of PII), *aff'd*, 701 F. App'x 670 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 1407 (2019). In any event, whether the arbitration provision covers Mr. Yu's claims here is a question that goes to the provision's scope, and the parties agreed to delegate questions regarding the scope of the arbitration provision to the arbitrator. Consequently, unless the delegation agreement is itself unenforceable, it is for the arbitrator, not the court, to decide whether Mr. Yu's claims are covered by the arbitration provision. *Cf. Henry Schein*, 139 S. Ct. at 530.

---

[35] Employment Agreement – ECF No. 13-2 at 2.

[36] Am. Arb. Ass'n, Employment[:] Arbitration Rules and Mediation Procedures at 12 (Rule 6) (2009), *available at* https://adr.org/sites/default/files/EmploymentRules_Web.pdf (last visited Aug. 1, 2019) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.").

[37] Pl. Opp'n – ECF No. 24 at 8.

## 2. Unconscionability

### 2.1 Governing Law

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration agreement is enforceable under the laws of the state where the contract was formed. *First Options*, 514 U.S. at 944; *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003). "Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

In California, contractual unconscionability has both procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)); *accord Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 723 (2017) ("[A] court may not refuse to enforce an arbitration agreement unless it is *both* procedurally and substantively unconscionable.") (emphasis in original) (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016)).

The Ninth Circuit has held that where, as here, the parties agreed to delegate questions of arbitrability to the arbitrator, the only question for a court "is whether the particular agreement *to delegate* arbitrability — the Delegation Provision — is itself unconscionable." *Brennan*, 796 F.3d at 1132 (emphasis in original) (citing *Rent-A-Ctr.*, 561 U.S. 63). Arguments that the arbitration provision as a whole is unconscionable or otherwise unenforceable are for the arbitrator, not the court, to decide. *Cf. id.* at 1133 ("[S]ince [plaintiff] failed to 'make any arguments specific to the delegation provision' and instead argue[s] 'that the Arbitration Clause *as a whole* is

unconscionable under state law,' 'we need not consider that claim,' because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question, as we held above.") (emphasis in original) (internal citations and brackets omitted) (quoting *Rent-a-Ctr.*, 561 U.S. at 73–75); *accord, e.g.*, *Gutierrez v. FriendFinder Network, Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *11 (N.D. Cal. May 3, 2019) (generally same) (citing *Rent-a-Ctr.*, 561 U.S. at 73); *Ortiz*, 2017 WL 1957072, at *2 (generally same) (citing *Mohamed v. Uber Techs. Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Brennan*, 796 F.3d at 1132).

### 2.2 Application

As the party opposing arbitration, Mr. Yu has the burden of proving that the agreement to delegate questions of arbitrability to the arbitrator is both substantively and procedurally unconscionable. He fails to meet that burden.

Mr. Yu makes no argument that the delegation agreement specifically is substantively unconscionable. He argues that the arbitration provision generally is substantively unconscionable because (1) it bars class actions, (2) it allows Volt to unilaterally modify the employment agreement, (3) it may require him to pay excessive fees, (4) it limits the parties' right to discovery, and (5) it bars appellate review.[38] Mr. Yu's first and fourth arguments go to the arbitration provision generally but do not relate to (and cannot be construed as attacking) the delegation agreement specifically and thus do not provide a ground for overturning it. *Cf. Gutierrez*, 2019 WL 1974900, at *11 ("The Court declines to address Plaintiff's third [unconscionability] argument because it is 'not specific to the delegation provision.'") (quoting *Rent-A-Ctr.*, 561 U.S. at 73). Mr. Yu's second argument fails because the Ninth Circuit has held that a "unilateral modification clause does not make the arbitration provision" — and, by extension, a delegation provision — "unconscionable. California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th

---

[38] Pl. Opp'n – ECF No. 24 at 20–21.

Cir. 2016) (citing cases); *accord Gutierrez*, 2019 WL 1974900, at *11 (same).[39] Mr. Yu's third argument fails because the parties' arbitration agreement and the AAA rules it incorporates do not require him to pay excessive fees.[40] Mr. Yu's fifth argument fails because while "binding arbitration would leave him with limited appeal rights, [such] conclusiveness is one of the primary purposes of arbitration." *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1165 (N.D. Cal. 2012) (citing *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 11 (1992)).

Because the agreement to delegate questions of arbitrability to the arbitrator is not substantively unconscionable, it is enforceable, and the court need not address procedural unconscionability. *Cf. Mance*, 901 F. Supp. 2d at 1166 (holding arbitration provision enforceable despite substantive unconscionability because there was no procedural unconscionability); *see generally Baxter*, 16 Cal. App. 5th at 723 (2017) ("[A] court may not refuse to enforce an arbitration agreement unless it is *both* procedurally and substantively unconscionable.") (emphasis in original) (citing *Baltazar*, 62 Cal. 4th at 1243). Even were it to do so, the procedural unconscionability of the delegation agreement is at most minimal, which does not warrant rendering it unenforceable given its lack of substantive unconscionability. *Cf. Poublon*, 846 F.3d at 1260 ("'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'") (quoting *Armendariz*, 24 Cal. 4th at 114). Mr. Yu argues that the arbitration provision

---

[39] Mr. Yu cites *Ridgeway v. Nabors Completion & Production Services Co.*, 139 F. Supp. 3d 1084 (C.D. Cal. 2015), to argue that a unilateral-modification clause renders an arbitration agreement unconscionable. Pl. Opp'n – ECF No. 24 at 20. Not only would a 2015 district-court opinion be unavailing in light of the Ninth Circuit's 2016 opinion in *Tompkins*, Mr. Yu neglects to mention that the Ninth Circuit reversed the district court's opinion in *Ridgeway* and held that the arbitration provision there was not substantively unconscionable. *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472 (9th Cir. 2018).

[40] The AAA rules require a filer to pay an initial filing fee of $300, which is less than the $400 cost to file a civil case in federal court. Am. Arb. Ass'n, Employment/Workplace Fee Schedule[:] Costs of Arbitration (2017), *available at* http://info.adr.org/employmentfeeschedule (last visited Aug. 1, 2019). The company (i.e., Volt) is required to pay an additional $1900 toward the filing fee and is required to pay the case-management fee, the hearing-room-rental fee, and all expenses of the arbitrator, unless otherwise agreed by the parties post-dispute. *Id.* Volt affirmed in its briefs that the AAA's fee schedule controls, Def. Reply – ECF No. 25 at 17, and reconfirmed at the hearing that it would pay for all arbitration fees other than Mr. Yu's $300 share of the initial filing fee.

generally (and, by implied extension, the delegation agreement) is procedurally unconscionable because (1) he was required to sign the arbitration provision as a condition of his employment without any opportunity to negotiate the provision's terms or to opt out, (2) the arbitration provision was hidden in fine print and includes legalese, (3) he did not realize at the time he signed the employment agreement what "binding arbitration" meant and did not know he was giving up his right to a trial, and (4) he was surprised by the arbitration provision. Mr. Yu's first argument fails because "[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Poublon*, 846 F.3d at 1261 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)); *accord Baltazar*, 62 Cal. 4th at 1241, 1245 (employer's telling employee "[s]ign it or no job" did not render arbitration provision so procedurally unconscionable as to be unenforceable). As another court in this district held in rejecting similar arguments to find this same Volt arbitration provision unconscionable, "while the Court acknowledges that some measure of procedural unconscionability exists as a result of the adhesive nature of the employment contract, the degree of such procedural unconscionability is low." *Ortiz*, 2017 WL 1957072, at *3. Mr. Yu's second argument fails because the arbitration provision was not hidden in fine print or unintelligible through legalese — it was part of a one-page employment agreement and was set out in its own paragraph (in the same size text as the rest of the agreement) and highlighted in bold (the only paragraph in bold). *Cf. Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc) (finding arbitration provision that was not "buried in fine print . . ., but was instead in its own section, clearly labeled, in boldface" not procedurally unconscionable). Mr. Yu's third argument fails because the arbitration provision expressly states that "[t]he Company and Employee hereby waive our respective rights to trial by jury of any cause of action or defense that each may have against the other[.]"[41] Mr. Yu's fourth argument fails because the

---

[41] Mr. Yu cites *Wisdom v. AccentCare, Inc.*, 202 Cal. App. 4th 591 (2012), to argue that even where a plaintiff was aware that he was signing an arbitration provision, if he submits a declaration attesting that he did not know what "arbitration" meant or that he was giving up his right to a trial, he can make

complaints he raises about surprise are insufficient to render the arbitration provision so procedurally unconscionable as to be unenforceable. *Cf. Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (finding no procedural unconscionability where arbitration provision was contained in "a large stack of documents [the employee was given] to review and sign by an assistant in HR" on his first day of work).

The agreement to delegate questions regarding arbitrability to the arbitrator is not unconscionable or unenforceable. Further objections about whether the arbitration provision as a whole is unconscionable or unenforceable, or whether the scope of the provision extends to Mr. Yu's claims, must be made to the arbitrator, not the court. *Cf. Henry Schein*, 139 S. Ct. at 530.

### 3. Class Arbitration

#### 3.1 Governing Law

The Supreme Court has held that "'a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.'" *Lamps Plus*, 139 S. Ct. at 1412 (emphasis in original) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). "Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to [class arbitration]." *Id.* at 1417.

#### 3.2 Application

While it is an open question as to whether the court should decide the question of class arbitrability or whether that is an issue delegated to the arbitrator, both parties ask the court to

---

a strong showing of procedural unconscionability. Pl. Opp'n – ECF No. 24 at 15. Mr. Yu neglects to mention that the California Supreme Court granted review in *Wisdom*, 273 P.3d 513 (2012), thereby rendering the Court of Appeal's decision nonprecedential. Cal. Rules of Ct. 8.1115(e)(1). At least one court has declined to follow the Court of Appeal's nonprecedential decision in *Wisdom* and held instead that a plaintiff's conclusory declaration that he did not understand that he was waiving his right to a jury trial does not render an arbitration provision so procedurally unconscionable as to be unenforceable. *Dalton v. J. Mann Inc.*, No. 16-cv-03409-EMC, 2016 WL 5909710, at *4–5 (N.D. Cal. Oct. 11, 2016).

decide the issue and neither asks the court to delegate it to an arbitrator.[42] The court therefore addresses the issue. *Cf. Lamps Plus*, 139 S. Ct at 1417 n.4.

Mr. Yu has not pointed to a contractual basis for concluding that Volt agreed to class arbitration. Mr. Yu argues that the AAA employment rules, which the parties' arbitration provision incorporates, anticipate and permit collective-action arbitration.[43] Mr. Yu does not support his argument with any citation to any provision in the AAA employment rules that discuss or permit class- or collective-action arbitration. Mr. Yu may be referring to certain supplementary rules the AAA has for class arbitrations. The supplementary rules expressly state, however, that "[i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."[44] Courts have rejected the proposition that the existence of these supplementary rules evinces an agreement to submit to class arbitration. *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599–600 (6th Cir. 2013) (noting that "the [AAA']s Supplemental Rules expressly state that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules" in rejecting argument that parties agreed to class arbitration); *accord, e.g.*, *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 945–46 (N.D. Cal. 2015) (generally same) (citing cases).

## CONCLUSION

The court grants Volt's motion to compel arbitration and conditionally dismisses this case.

Mr. Yu said at the hearing that he wants to amend his complaint to add a PAGA claim. The court gives Mr. Yu 21 days to file a motion for leave to file an amended complaint. (Volt may

---

[42] Def. Mot. – ECF No. 13 at 14–16; Pl. Opp'n – ECF No. 24 at 22–24; Def. Reply – ECF No. 25 at 17–19.

[43] Pl. Opp'n – ECF No. 24 at 24.

[44] Am. Arb. Ass'n, Supplementary Rules for Class Arbitration at 4 (Rule 3) (2003), *available at* https://www.adr.org/sites/default/files/document_repository/Supplementary%20Rules%20for%20Class%20Arbitrations.pdf (last visited Aug. 1, 2019).

oppose any such motion.) If Mr. Yu does not file a motion for leave to amend, the court will direct the clerk of court to close this case.[45]

**IT IS SO ORDERED.**

Dated: August 1, 2019

LAUREL BEELER
United States Magistrate Judge

---

[45] The court notes that even if it were to grant Mr. Yu leave to amend to add a PAGA claim, the appropriate course might then be to stay the PAGA claim while the arbitration of his other claims is pending. *Cf. Aviles v. Quik Pick Express, LLC*, 703 F. App'x 631, 632 (9th Cir. 2017) ("[T]he district court should stay [plaintiff]'s PAGA claims during the pendency of the arbitration.").